# Deborah Shelly, Appellant, *v.* John B. Dampman, Appellee.

In statutes limiting the right of appeal the accepted rule of construction makes the limitation run from the time when the cause of action is first subjected to the operation of the statute.

Under the act of June 24, 1895, P. L. 212, an appeal taken more than three months after the date of the rendition of the judgment in the court below but within three months after July 1, 1895, when the act establishing the Superior Court took effect, is in time.

When a verdict is taken subject to the opinion of the court, upon points reserved, the facts should be distinctly stated, as well as the questions raised upon them; and the judgment to be pronounced upon the solution of the questions of law thus reserved, should also be specified, as in a case · stated.

The point reserved, in this case, held to be insufficient to sustain a judgment for the defendant *non obstante veredicto.*

As shown by the verdict and the reserved point in the present case, A. is arrested by B. an officer of some sort, the cause of the arrest and the authority therefor not appearing. C. asks B. where the arrest was made. B. replies that it took place at the home of D. who is a private citizen, and incidentally adds that D. keeps a bawdy-house. This last statement is false and groundless. C., however, immediately published in a newspaper, as an absolute fact, that D. is a bawdy-house keeper. *Held,* That there was neither privilege nor ground for privilege furnished by the circumstances and subject-matter of the publication; that there was not such probable cause as would justify such a charge; and that the only excuse or defense would be to prove its truth.

*Libel—Charge of keeping a bawdy-house—Probable cause.*

The commission of adultery on any one's premises and the arrest there of the guilty parties, would not, without more, give any one the right to falsely charge the owner with keeping a bawdy-house. Probable cause that would justify such a charge must be such as would justify a prosecution for the alleged crime.

Argued Nov. 18, 1895. Appeal No. 29, Nov. T., 1895, by plaintiff, from judgment of C. P. Berks Co., Feb. Term, 1893, No. 85, non obstante veredicto in favor of defendant. Before RICE, P. J., WILLARD, BEAVER, REEDER, WICKHAM, McCARTHY and ORLADY, JJ. Reversed.

Trespass for libel in publishing plaintiff as keeper of a bawdy-house.

John B. Dampman, on or about the first day of December, A. D. 1892, was the editor of the Reading Morning Herald, a daily newspaper published in the city of Reading. Deborah Shelly was at the same time a resident of said city, a widow, of acknowledged respectability, living with her daughter at No. 954 Muhlenberg street.

About November 30, 1892, one John C. Zuber and Mrs. Emma Stieff were arrested by John Mayer, first sergeant of police, at a house in the said city located on Court street between Second and Third streets. The house on Court street was in the occupancy of a party by the name of Shell, and was said to be a bawdy-house.

A reporter on the Herald was one Charles W. Gerhart, who heard of the arrest on the street, and who wrote the libellous article published in the Herald on December 1, 1892.

From his testimony it appeared that he got the location of the house from the city directory. All the witnesses produced on the part of the defendant swore substantially that the number and street as contained in the publication, was taken from the city directory. It was admitted by the defendant, that he was the publisher and proprietor of the Reading Morning Herald, in which the alleged libellous article was published. It was shown by the testimony of the plaintiff that she lived, on said December 1, 1892, at No. 954 Muhlenberg street, where she had resided for a period of twelve years; that she was a widow, and supported herself by doing housework. The article complained of was then offered in evidence and admitted, whereupon plaintiff rested.

The defendant, by way of defense, offered in evidence a retraction published December 2, 1892. It was admitted. It also appeared that the publisher and proprietor knew nothing of the publication until he saw it in the paper on December 1, 1892. From the evidence produced it appears that no effort was made to ascertain the truth of the circumstances surrounding the arrest, or where it occurred. It does appear, however, that the employees of said newspaper were content with an examination of the city directory to fix the locality. When all the evidence had been submitted the court reserved the following point.

" It being an undisputed fact in this case that the defendant's

employees made inquiry of the officers who made the arrest of Zuber, as to the place where it was made and its character, and received from them the information, which was believed, that the place was the residence of a person by the name of 'Shelly,' on Muhlenberg street near Tenth, and that the 'Shelly' place was a bawdy-house; and it being further a fact that the city directory, which was consulted by said employees, disclosed but one resident on Muhlenberg street near Tenth by the name of Shelly, to wit, 'Deborah Shelly, 954 Muhlenberg street,' the court reserved as a matter of law the question whether under those facts there can be any recovery in this case."

The court then charged the jury, who brought in a verdict in favor of the plaintiff for $150. On April 19, 1895, the court filed an opinion, (Reported in 4 D. Repts. 496) setting aside the verdict, and entering judgment for the defendant, non obstante veredicto.

*Error assigned* was entering judgment in favor of the defendant, non obstante veredicto.

*John F. Smith* and *Kaufman & Schrader* with him, for appellant.—The present case does not come under the class of privileged communications pointed out in the opinion of the court below on which the learned court cites Odgers on Libel and Slander on page 196. Especially is this so where the declarations related not to the defendant, but to a third party wholly unacquainted with the arrest: Gottshalk v. Metzgar, 23 W. N. 541. The judgment is not sustained on any of the grounds stated in the opinion of the lower court. (See 4 Dist. Rep. 496.) The facts stated in the reserved point of this case are, we submit, insufficient to show due care before the publication was made. These facts were argued before the jury, submitted to them, and the jury found the general verdict for the plaintiff.

*Richmond L. Jones*, for appellee,—at the argument, submitted a motion to quash the appeal under sec. 8 of the act of June 24, 1895, P. L. 212. If the appeal had been taken to the Superior Court on or before July 19, 1895, within three calendar months of entry of the judgment it would have been effectual, but the

**118**     SHELLY, Appellant, *v.* DAMPMAN.

Arguments—Opinion of the Court.     [1 Super. Ct.

law is imperative, and after three months had expired the right to appeal was lost.

On the questions raised by the appeal counsel for appellee submitted no paper-book, but relied on the opinion of the court below.

OPINION BY WICKHAM, J., January 20, 1896:

The first matter claiming attention, in this case, is the appellant's motion to quash the appeal, based on the following clause from the 8th section of the act of June 24, 1895, creating the Superior Court, to wit: "An appeal to the Superior Court must be taken and perfected within three calendar months from the day when the judgment, sentence, order or decree appealed from was entered in the court below, otherwise the appeal shall be quashed upon motion."

It appears from the record that the judgment, in the court below, was entered on March 18, 1895, although the paper-books give the date of the entry as April 19th of the same year. The contradiction in these dates is not, however, a matter of controlling importance in the decision of the questions raised by the motion to quash.

By the 13th section of the Superior Court Act, the right to appeal to the Supreme Court in all cases like the one in hand ceased on July 1, 1895. Thereafter this court had exclusive jurisdiction. But if the limitary proviso above quoted is held to be retrospective in its operation, the appellant's right to come here never accrued, as the judgment against her was entered more than three months before this court was organized. Up to the passage of the Superior Court Act she had two years from and after March 18, 1895, wherein to go to the Supreme Court. If the construction urged by the appellee is correct, the appellant obtained no right to come to this court at any time, and the period of nearly twenty-one months, which she yet had under the former law, to appeal to the Supreme Court, was cut down to seven days. Practically this would take away the right of appeal altogether, in this and like cases, as, in the nature of things, litigants could not know of the provisions of the Superior Court Act, until its publication, many weeks after its passage. The decision of the question under consideration is important not only to the present appellant, but as well to a

class of similarly situated litigants who have been informed by the recent Supreme Court decisions in Christner v. John, 171 Pa. 527, and Ruffner v. Hooks, Ibid. 53, that their remedy, if any they have, must be found in this tribunal.

The evident general intent of the lawmakers was to give every suitor, asking relief in the Superior Court a reasonable time within which to take his appeal. We think that it was the purpose to give all litigants, referred to this court, and whose cases were ripe for appeal on July 1, 1895, three months from and after that date, unless less time remained to them under the old law. To illustrate: If A. on July 1, 1895, had three months or more of the two years allowed him to appeal to the Supreme Court, he would have three months in which to appeal to this court. If he had left less than three months under the old law, he would be entitled to that fractional part of the two years, whatever it might be, wherein to bring his case here. This interpretation results from considering so much of the statutes relating to the time of taking appeals to the two appellate courts which were applicable to cases pending in the lower courts, when the Superior Court Act was passed, as, in a certain sense, in pari materia, and therefore to be viewed together, and holding further, that the three months' limitation, in the Superior Court Act, began to run when the act took effect. While the decisions construing ordinary statutes of limitation do not govern this case, they afford analogies which may very properly be considered and given weight. In Sohn v. Waterson, 17 Wall. (U. S.) 506, BRADLEY, J., says, " A statute of limitations may undoubtedly have effect on actions which have already accrued, as well as on actions which accrue after its passage. Whether it does so or not will depend upon the language of the act, and the apparent intent of the legislature, to be gathered therefrom. When a statute declares generally, that no action, or no action of a certain class, shall be brought except within a certain limited time after it shall have accrued, the language of the statute would make it apply to past actions as well as those arising in the future ; but if an action accrued more than the limited time before the statute was passed, a literal interpretation of the statute would have the effect of absolutely barring such action at once. It will be presumed that such was not the intent of the legislature." In speaking

of a similar statute, TANEY, C. J., says that the limitation runs from the time "when the cause of action is first subjected to the operation of the statute:" Lewis v. Lewis, 7 How. (U. S.) 776. See also 13 Am. & Eng. Ency. Law, 701 and 793.

This way of looking at the limitary clause in the act now under consideration is in accordance with its spirit; relieves it from the charge of being absurd and unjust and preserves to all the right of appeal.

The motion to quash is overruled.

Coming now to a consideration of the case on its merits, it is necessary to outline its facts, as presented by the evidence, in order to properly understand what is hereinafter said and decided.

Between 9 and 10 o'clock, on the evening of November 30, 1892, a man named Zuber and a Mrs. Stieff were arrested at the house of one Shell, on Court street, in the city of Reading. A warrant was in the hands of the arresting officers, charging Zuber with having committed adultery with Mrs. Stieff. The pair were taken under such circumstances as justified the inference that they were then together, committing, or intending to commit, a similar offense to that charged in the warrant. They were both taken to the station house. While there, a reporter for the Reading Morning Herald came upon the scene and asked the officers where the arrest had been made. The reply was, "At Shelly's." "Shelly" was a nickname for a man named Shell, who, it seems, kept a bawdy-house. After interviewing the prisoners, the reporter came out of the cell and inquired of the officers, "Where does this woman live?". One of the officers remarked, "On Muhlenberg, near Tenth." The reporter in his testimony says, that by "this woman" he meant "Shelly." As no one had told him that "Shelly" was a woman, the almost necessary conclusion, looking at all the circumstances, is that he meant Mrs. Stieff, with whom he had just been conversing, and who actually lived in the neighborhood mentioned in the answer. That he was understood as meaning Mrs. Stieff, and that the answer referred to her, is quite clear from the evidence. Provided with the meager information above mentioned, the reporter went to his employer's office. There, a directory was consulted, and it was found that one Deborah Shelly lived at 954 Muhlenberg street. In the next issue of the Herald, appearing the fol-

lowing morning, Mrs. Shelly, a respectable widow, was through the medium of large head-lines, falsely accused of keeping a bawdy-house.

At the trial the following point was reserved: "It being an undisputed fact in this case that the defendant's employees made inquiry of the officers who made the arrest of Zuber, as to the place where it was made and its character, and received from them the information, which was believed, that the place was the residence of a person by the name of Shelly, on Muhlenberg street near Tenth, and that the Shelly place was a bawdy-house; and it being further a fact, that the city directory, which was consulted by said employees disclosed but one resident on Muhlenberg street, near Tenth, by the name of Shelly, to wit: 'Deborah Shelly, 954 Muhlenberg street'—the court reserved as a matter of law the question whether, under those facts, there can be any recovery in this case."

This point is unfortunate in two respects. First, an examination of the evidence shows that no officer or any one else told, or intended to tell, any employee of the defendant that Shelly's place was on Muhlenberg street. It is reasonably plain that the question put by the reporter to the officers, viz: "Where does this woman live" was understood, and properly so, to refer to Mrs. Stieff, and was answered accordingly. It is too late, however, to rectify this mistake. The counsel for the plaintiff should have taken an exception, when the point was reserved. Failing to do so, the facts set out must be taken as true. Second, the point is not in proper form. "When a verdict is taken subject to the opinion of the court, upon points reserved, the facts should be distinctly stated, as well as the questions raised upon them; and the judgment to be pronounced upon the solution of the questions of law thus reserved, should also be specified, as in a case stated:" Yerkes v. Richards et al., 170 Pa. 346. We may properly add, quoting further from the decision just cited, "In cases where it is evident that no injustice has been done, the temptation to relax the rule is so great that it has been too frequently done, but this is not a case in which there should be any departure from the established rule."

Leaving, for the present, the technical objection to the point just mentioned, let us see if the matters recited are sufficient

to justify the judgment non obstante veredicto entered for the defendant.

Looking at the question presented we must be governed entirely by the few facts necessarily established by the verdict, and those found in the reserved point. We have no right to supplement them with other facts merely appearing in the evidence, as was done by the learned judge of the court below in his able and ingenious opinion, directing judgment for the defendant, which opinion has been adopted by the appellee as his argument here. The facts established by the verdict are as follows:

First. That the defendant published of the plaintiff, that the latter was the keeper of a bawdy-house.

Second. That the charge was untrue.

Nothing else was submitted to the jury, and nothing more was involved in their finding, save the amount of damages to be awarded. (See the charge.)

Let us now analyze the reserved point, commenting on the same while going along. It says that Zuber was arrested. Whether for adultery, larceny, assault, violating a city ordinance or any offense at all, and whether on a warrant or without it, is not stated in the point; nor in a special finding of the jury. It is true that the learned judge of the court below says the crime was adultery and justifies the publication, on the ground that when one is arrested, on the charge of adultery, a false allegation of the arresting officers, that the house where the arrest was made was a bawdy-house is so far a part of the res gestæ as to make it, if believed, (after reasonable investigation) a protection to him who publishes it. At the same time he concedes that had the defendant under the same circumstances charged the plaintiff with being " a thief or the like," he would be liable. But the learned judge had no right, looking at the reserved point and the verdict, and he could look no further, to assume that Zuber was arrested for adultery, consequently, so much of his opinion as rests on this important fact may be dismissed without further discussion. If this matter of fact is important, it should have been included in the point or found by verdict: Wilson v. Steamboat Tuscarora, 25 Pa. 317. The point goes on to recite that the defendant's employees were informed and believed that the place where the

arrest was made was the residence of a person by the name of Shelly, not alleging that Shelly was a woman; that the Shelly place was a bawdy-house, and that the city directory consulted by said employee disclosed but one resident on Muhlenberg street, near Tenth, bearing the name of Shelly, to wit: Deborah Shelly, 954 Muhlenberg street.

Conceding the occasion to have supplied a basis of privilege, the measure of diligence and care here shown to ascertain the truth of the statement published, is, in our opinion, entirely insufficient. It is not suggested in the point that there was any necessity or reason for such haste in publishing the defamatory matter as precluded inquiry, in the usual way, which would have revealed the utter falsity of the charge. It is better that the public should wait a day or two for the salacious details of a case like the one reported, or, for that matter, go altogether without them, rather than that the reputation of innocent people should be blackened by what MITCHELL, J., in Conroy v. Pittsburg Times, 139 Pa. 334, calls the " Mad hunt for news and sensations." Probable cause that would justify such a charge as was made against the plaintiff must be such as would justify a prosecution for the alleged crime : Neeb v. Hope, 111 Pa. 145; Briggs v. Garrett, 111 Pa. 404. We fail to see how the defendant could have justified his conduct, if after consulting the directory, he had rushed before a magistrate and made an information against the plaintiff for keeping a bawdy-house, instead of rushing into print with the same charge.

Let us now briefly consider the question whether the occasion of the publication or the conduct or business of the plaintiff furnished any foundation of privilege at common law. The constitutional provisions as to privilege, we need hardly say, do not apply to civil actions. The case as presented to us by the reserved point and verdict, may with entire fairness to the defendant, be formulated as follows: A. is arrested by B. an officer of some sort, the cause of the arrest and the authority therefor not appearing. C. asks B. where the arrest was made. B. replies that it took place at the home of D. who is a private citizen, and incidentally adds that D. keeps a bawdy-house. This last statement is false and groundless. C., however, immediately publishes in a newspaper, as an absolute fact, that D. is a bawdy-house keeper.

It needs no argument or citation of authorities to show, that the only way to justify or excuse such a publication would be to prove its truth. But we are willing, and think it right, to go further and say that, looking at all the evidence and taking the most favorable view of it that the defendant could ask, there was neither privilege nor ground for privilege furnished by the circumstances and subject-matter of the publication. The plaintiff was a private citizen, living in the kindly obscurity that hides and shelters the lowly. She was not a public official; a candidate or applicant for office; a teacher, calling attention to herself and her methods by puffing circulars and advertisements, or a keeper of a public house. No legal proceedings had been instituted or threatened against her; she had not been arrested; she had violated no law; no one had been employed or deputed to obtain information as to the character of her house, or any other house in the neighborhood; she had done nothing to attract or invite public attention or criticism. For these reasons, none of the authorities, relied on by the learned judge of the court below, are applicable in support of his view, that the occasion was privileged.

The commission of adultery on the plaintiff's premises, and the arrest there of the guilty parties, would not, without more, give any one the right to falsely charge her with keeping a bawdy-house. For the commission of offenses against chastity, no special place is required. Such occurrences happen from time to time in the most respectable and carefully conducted hotels, boarding houses and homes in the land, and cannot be altogether prevented. Guests, visitors or servants may be the guilty parties, without knowledge or fault on the part of the householder or proprietor. The mere fact that a man and a woman are arrested in a hotel for adultery, furnishes not even the remotest excuse for calling the place a house of prostitution, thereby injuring and disgracing the proprietor and his other guests. The capture of a thief, plying his vocation in the house of an honest man, does not suggest that the latter keeps a " fence " or place for the receipt of stolen goods. We must not confound mere propinquity with connection and relation.

The statement made by the police officer as to the character of the house, if any such statement were made, does not help

the defendant.    What was said was collateral and subsequent to what the officer was authorized to do and had done.    The arrest of a man for a crime does not make privileged the publication of a policeman's subsequent false and defamatory narrations concerning a private citizen, who simply happened to be with or near the offender when the arrest was made, and was not otherwise connected with him or the offense.    To hold otherwise, would open the door to intolerable results.

If, in the present case, the charge made against the plaintiff was privileged, because in some way it was apparently connected with the crime and arrest of Zuber and his paramour, and was therefore a relevant part of the account thereof, then it would have been equally relevant and privileged to have added the names of any half score of the most innocent and reputable young girls of Reading, as inmates of the alleged bawdy-house, and therefore common prostitutes, provided some officer at the station house had risked making such a statement, and the reporter had believed it.    A bawdy-house, of course, cannot exist without its necessary parts, and the circumstances which would justify the one statement, should be sufficient to justify the other.

On the whole we are satisfied that the plaintiff was entitled to judgment on the verdict.

And now, to wit; January 20, 1896, the judgment of the court below is reversed, and judgment awarded for the plaintiff, on the verdict, for $150, with interest from September 28, 1894, and costs.