# Edward Ingram *v.* Alfred Reed, Emma Reed, William Rapp and Charles Walker, Appellants.

*Libel—Newspaper—Privileged communication—Province of court.*

The privilege appertaining to the proprietor of a newspaper, in publications made by him in pursuance of a duty he owes to society, is a qualified one to be declared by the judge, under plain, undisputed facts. It is for the court to determine the publication to be privileged or not privileged.

A qualified, privileged communication, is defined to be " one made upon a proper occasion from a proper motive and based upon reasonable or proper cause and made in a proper manner."

*Libel—Damages—Character of libel—Question for jury.*

Where in an action for libel the undisputed testimony disclosed that there was no adequate effort made upon the part of the defendants to ascertain whether the statements made were true or false before making the publication, the question of privilege was properly withdrawn from the jury and the case left to their consideration on the question whether the publication complained of tended to injure the plaintiff in his good name and reputation, held him up to public ridicule and contempt, and injured his standing in society, with instructions, upon affirmative finding, to find for the plaintiff such sum as they believed would be proper compensation for the injury resulting.

Argued April 27, 1897.    Appeal, No. 155, April T., 1897, by defendants, from judgment of C. P. No. 3, Allegheny Co., Nov. T., 1892, No. 469, on verdict for plaintiff.    Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Trespass for libel.    Before KENNEDY, P. J.

The following facts appear from the charge of the court below:

" Gentlemen of the Jury.    This is an action of libel.    The plaintiff seeks to recover damages from the defendants which, he alleges, have accrued to him by reason of the publication of an article that is libelous in its character.    A libel is the publication of any printed or written matter which is calculated to injure a person in his good name and reputation, or that holds him up to public ridicule and contempt.    The defendants are the publishers of a newspaper, publish in the city of Pittsburg,

called the Pittsburg Commercial Gazette. In their issue of Friday, October 14, 1892, an article was published which has been read to you, and that article the plaintiff claims was calculated to injure him, and did injure him in his good name and reputation, in that it held him up to public ridicule and contempt, and injured his standing in the community or in society. The article is quite a long one, and it is not necessary for me to read it. In substance it alleges that the plaintiff was engaged in the sale of liquors without a license from the proper county authorities; that he had paid a government license and tax to the government for the privilege of retailing liquors, and upon the strength of that he was selling liquor without any license from the proper county authorities. This is substantially the charge, and his name is given, with that of a great many others who were engaged in the same business, and there are other charges connected with the list of names that are included in the publication, namely, keepers of speakeasies, or other houses of bad repute. That, I say, is the insinuation in the article. But the real charge made against them seems to be substantially that they were selling liquor without the proper license from the county authorities, and perhaps, too—you will recollect the article—there is included in the charge that they were selling on Sunday. Now, these are violations of law, these charges, the sale of liquor without license, or the sale on Sunday; they are criminal offenses and usually a charge made against a person that he has committed a criminal offense is libelous in its nature, although not necessarily so. If, however, the charge tends to hold the person up to public ridicule or contempt, and is calculated to injure him in the community, or his standing in society, then it is libelous. [The question for you to determine is, whether the article here, which does charge this plaintiff with a violation of law, is calculated to injure him in his good name and reputation, and whether it held him up to public ridicule and contempt and injured his standing in society; if so, he is entitled to recover in this case.] [1]

" It seems the information that formed the basis of the article in question was obtained at the office of internal revenue in the city of Pittsburg, where a list of the names of those who took out this government license is kept, and persons connected

with this newspaper, upon application to the proper office, obtained there a list of the names of those who had taken out this government license for the retail of liquors. Finding that certain of them had not obtained a license for the sale of liquors from the county, the list was published as those that were engaged in the sale of liquors illegally, they not appearing upon the list in the county offices. It is assumed that this list at the internal revenue office was correct. Now, it seems that in that list a mistake was made by the government officer in registering the name of Mr. Ingram, who was a manufacturer of cigars. They improperly placed him as a retail liquor dealer. His name comes on the list after the names of several others who were engaged in the business of retailing liquors, and opposite their names appears R. L. D., meaning retail liquor dealer, and below that and following it are several other names in the same business, with the ditto mark under them, and then Mr. Ingram's name, with the ditto mark. As I have stated, this was the basis of information obtained by the newspaper, and of the publication of the article. [It seems, however, that a mistake was made by the officer in placing this ditto mark opposite the name of Mr. Ingram, and there should have been the letters M. of C., meaning manufacturer of cigars, opposite his name. That was subsequently placed, instead of the ditto mark, as the mistake on the book was corrected some days afterwards, on its being discovered. But in the meantime, as appears here, this publication had been made, and Mr. Ingram's name appears in the list of those who are engaged in an illegal traffic of liquor. This record, while it misled the newspaper publishers and caused this mistake, yet they were not justified in making the publication upon that record alone. If the record had been inspected it would have disclosed the fact that he was really not a retail liquor dealer. This was shown by the fact that no tax appeared to have been paid by him, and the number was not the number succeeding that of the one just before him upon the list, as it would have been if he had been engaged in that business, but a much smaller number, which corresponded with those, or was next succeeding the one who was registered as a manufacturer of cigars.] [2] [So I say the newspaper was not justified in publishing this man as a retail liquor dealer, merely because they found his name as it

was upon this book. Even if it had not been disclosed by the book itself that he was not engaged in this business, it would have been their duty to make some effort, at least, to ascertain the truth of the charge that they were making, namely, that he was engaged in this illegal business, before making the publication. In other words, they took the chances of the publication if they did publish without making any investigation to ascertain whether or not it was true.] [3]

" [The question for your determination is, whether or not this article was libelous in its character, whether it held up the plaintiff to public ridicule and contempt, and injured him in his good name and reputation; if so, he is entitled to a recovery here in such sum as will compensate him for the injury to his character, resulting from this publication, and you are the sole judges as to the amount. You will take all the facts and circumstances into consideration in ascertaining that amount.] [4] And while I have stated that the publication is not justified alone from this record of the internal revenue office, yet that fact is to be taken into consideration in mitigation of the damages to be recovered. It shows some effort upon the part of the newspaper to be correct, and that fact, while it does not justify the publication and is not a complete defense to the action, is to be taken into consideration by you as one of the circumstances in mitigation of the damages—one of the circumstances, with others, showing what basis the newspaper had for making the publication. Then you have also another circumstance, the fact of the correction of the mistake some days later. [This article appeared on the 14th of October. On the 18th of October the statement was published in the same newspaper that this was a mistake and that Mr. Ingram had not taken out a government license or paid the government tax for the privilege of retailing liquors, but that he was engaged in the manufacture of tobacco and cigars, and had taken out that sort of license. This correction was made on the 18th. You are to take that fact into consideration; but in connection with that you are also to consider that the correction was not made until after the suit had been brought.] [5] In the article which has been offered in evidence, containing the correction, there is the statement that Mr. Ingram had brought suit; so that the correction was not made until after he brought suit.

" [If you find the article libelous in its character, under the instructions I have given you, then you will find a verdict in favor of the plaintiff for such sum as you believe would be proper compensation to him for the injury done to him.] [6]

" The defendant has requested the court to charge as follows:

" [First. It being undisputed that plaintiff was registered in the public records of the United States as a retail liquor dealer, and that he had no license from the courts of Allegheny county, and that defendant searched and relied upon said records, it being a matter of public concern, the defendants had probable cause for the publication, and no malice having been proven the verdict should be for the defendants. *Answer:* This point is refused.] [7]

" Second. In order to made any publication libelous per se, that is, implying malice on its face, the publication must not only charge the plaintiff with an indictable offense, but also with an offense involving moral turpitude. The mere charge or publication that the plaintiff sold liquor at retail without a license, is not charging the plaintiff with an offense involving moral turpitude. *Answer:* This point is affirmed. But the jury are to determine whether or not this does hold him up to public ridicule and contempt, and if so, it is libelous.

" [Third. That the publication complained of is a privileged publication, and if the jury believe it was made in good faith and on probable cause, then the verdict must be for defendants, unless the plaintiff has proven by satisfactory evidence actual malice on part of defendants outside and independent of the publication, although the allegations of the publication may not be true. *Answer:* This point is refused. It is not a privileged communication; I have already said that to the jury.] [8]

" [Fourth. If the jury believe that the publication complained of was made on proper occasion, in a proper manner, from a proper motive, and defendants had reasonable or proper cause to believe them to be true, plaintiff cannot recover, and the verdict must be for the defendants. *Answer:* This is a correct statement of a principle of law, gentlemen, but in this case there does not seem to have been any effort made upon the part of the defendants to ascertain whether the statements made were true or false, before making the publication, and the principle here laid down is not applicable in this case.] [9]

" [Fifth. Under all the evidence the verdict must be for the defendants. *Answer :* This point is refused.] [10] "

To which charge of the court and answers to defendants' points, except where affirmed without qualification, counsel for defendants except, and at their instance bill sealed.

Verdict and judgment for plaintiff for $700.   Defendants appealed.

*Errors assigned* were (1–6) Portions of the charge of the court, reciting same.   (7–10) Answers to defendants' points, reciting same.

*Thomas B. Alcorn* with him *Henry A. Miller*, for appellants.— Is the publication complained of in this case a privileged communication, that is, was it published on a proper occasion? Newell on Slander and Libel, p. 500, secs. 96, 97, 98; Eames v. Whittaker, 123 Mass. 342; Briggs v. Garrett, 111 Pa. 404; Jackson v. Pittsburg Times, 152 Pa. 406; Urben v. Times, 1 Mona. 135.

A communication to be privileged must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause. When so made in good faith the law does not imply malice from the communication itself, as in the ordinary case of libel; actual malice must be proved before there can be a recovery.   Neeb v. Hope, 111 Pa. 145; Briggs v. Garrett, 111 Pa. 404; Press Co. v. Stewart, 119 Pa. 584; Jackson v. Pittsburgh Times, 152 Pa. 406.

In a case of a privileged communication, if there is no evidence, either intrinsic or extrinsic, or both, showing actual and express malice by the defendants against the plaintiff, it is the duty of the court to instruct the jury to find for the defendants whether there was or was not probable cause for making the publication.   Neeb v. Hope, 111 Pa. 145; Chapman v. Colder, 14 Pa. 365; Briggs v. Garrett, 111 Pa. 404.

The court below, therefore, should have instructed the jury to find for the defendants as requested in our fifth point.

*John F. Miller* with him *Robert S. Sill*, for appellee.

OPINION BY WILLARD, J., Oct. 11, 1897:

The only question considered by the learned trial judge ma-

terial to submit to the jury was whether the printed publication of and concerning the plaintiff's business, which appeared in the defendants' newspaper in the issue of October 14, 1892, tended to injure the plaintiff in his good name and reputation, and held him up to public ridicule and contempt, and injured his standing in society. Upon an affirmative finding upon this question the jury were instructed to find for the plaintiff such sum as they believed would be proper compensation for the injury to his character resulting from the publication.

The learned trial judge held as a matter of law, under the evidence, that the publication was not privileged. If he was correct in this the case was well tried and the verdict should be sustained.

A privileged publication has been considered by this court in Shelly v. Dampman, 1 Pa. Superior Ct. 115; Oles v. Pittsburg Times, 2 Pa. Superior Ct. 130; and Coates v. Wallace, 4 Pa. Superior Ct. 253, and this case must be determined in harmony with those cases.

We are not dealing with the rule which protects legislators in words spoken in the heat of debate, the judge in his utterances from the bench, the advocate in his address to the jury, or the witness on the witness stand. That rule does not apply to the proprietor of a newspaper in publications made by him in pursuance of a duty he owes to society. His privilege is a qualified one to be declared by the judge under plain undisputed facts and circumstances privileged or not privileged. A qualified privileged communication, such as we are considering, is defined to be "one made upon a proper occasion from a proper motive and based upon reasonable or proper cause and made in a proper manner."

The answer to the defendants' fourth point discloses the reason of the learned trial judge for withdrawing the case from the jury on every question except as hereinbefore stated. The point and answer were as follows: "If the jury believe that the publication complained of was made on a proper occasion, in a proper manner and from a proper motive, and the defendants had reasonable or proper cause to believe them to be true, plaintiff cannot recover and the verdict must be for the defendants." The court answered, "This is a correct statement of a principle of law, gentlemen, but in this case there does not seem

to have been any effort made upon the part of the defendants to ascertain whether the statements made were true or false before making the publication, and the principle here laid down is not applicable in this case." This answer practically says, you cannot find the facts as stated in the point for the reason that the effort made on the part of the defendants to ascertain whether the statements were true or false were inadequate and insufficient. Under the undisputed testimony we think the answer was correct.

What was the article and what means were used to ascertain the truth of the alleged facts upon which it was based? The article published by the defendants, so far as it relates to the plaintiff, Edward Ingram, charged that he, with twenty-nine other persons, was carrying on a business calling for the scrutiny of the police, that "the persons named, whose correct addresses are given, have paid the United States government a tax for the privilege of selling all sorts of liquors, but are not licensed by the county judges to engage in such sales." That "Their places are never closed and the proprietors openly sell on the Sabbath." "Here are the names. There are thirty names following, of which four are females." The fourteenth name on the list was that of Edward Ingram, 3717 Butler street, Pittsburg. This was a grave charge against a citizen which never would have been made had the reporter made inquiry of the revenue officer, or visited Ingram's place of business prior to the publication.

It appears that in the published article the list was made up from the record of the United States Internal Revenue Office, which was admitted on the trial to be a public record of that office. From the evidence it appears that a book is kept by the collector of internal revenue containing the names of the special taxpayers and all those that registered as manufacturers of cigars and tobacco, etc., that on said list, first, appears the name of the taxpayer or dealer; second, the character of the business the person is engaged in; third, his place of residence; fourth, the amount of tax he pays, if any. The retail liquor dealers are numbered as a class and the dealers in cigars and tobacco as a class. The number of the former far exceeds that of the latter. It further appears that the letters R. L. D., opposite the person's name in the column designating the business, indicates

retail liquor dealer, and the letters M. C. indicate manufacturer of cigars. Opposite the name of Edward Ingram in the column designating his business were ditto marks, and above, opposite another name, appeared in the same column R. L. D. But it appears that opposite the plaintiff's name there was nothing to indicate that he had paid a special tax, and the smallness of his number would indicate that he was not a retail liquor dealer. The ditto marks indicating his business were entered on the record by mistake, and after the publication complained of were changed to M. C. in the revenue office. A careful investigation of the record before it was thus changed and inquiry of the revenue officers would have disclosed the true character of Mr. Ingram's business.

It appears from the testimony of Mr. Reed, one of the proprietors of the Commercial Gazette, that a person was sent from the office of the newspaper to the office of the collector of internal revenue to look at the record. As a result of his investigation, in the next issue of the newspaper the plaintiff, with others, was published as a person paying tax to the United States as a retail liquor dealer who had no license from the commonwealth to engage in such business, and by fair implication from the language of the article was keeping open house on Sunday. It is stated in that part of the charge of the court made the subject of the second and third specifications of error that the inspection of the record was inadequate, in other words that the means were at hand for ascertaining the exact truth, but, without availing themselves thereof, the defendants published the article, and the judge adds : "Even if it had not been disclosed by the book itself that he was not engaged in this business, it would have been their duty to make some effort, at least, to ascertain the truth of the charge that they were making, viz., that he was engaged in this illegal business before making the publication. In other words, they took the chances of the publication, if they did publish, without making any investigation to ascertain whether or not it was true." We do not think the trial judge erred in his estimate of the effort.

In Odgers on Libel and Slander at page 199 it is said, "If indeed there were means at hand for ascertaining the truth of the matter, of which the defendant neglects to avail himself and chooses rather to remain in ignorance when he might have

obtained full information, there will be no pretense for any claim of privilege."

There are undoubtedly cases where, under certain circumstances, it is the duty of the judge to submit the testimony and all the circumstances to the jury in order to ascertain whether the publication is privileged or not. But where the evidence is undisputed as in this case " whether the communication be privileged or not, is a question for the court, and not for the jury:" Briggs v. Garrett,. 111 Pa. 404. In pursuance of this rule we think the learned trial judge properly disposed of this case in his charge and submitted to the jury the only question for their consideration.

The assignments of error are overruled and the judgment affirmed.