# Ross C. Collins *v.* The Morning News Company, Appellant.

*Libel—Evidence—When record of a crime charged inadmissible*

Where the libel charged plaintiff as indicted for a criminal offense, evidence tending to show that plaintiff was on the bail of the real offender is properly excluded, it not being pretended that the publication was based upon knowledge of the facts as shown by the rejected testimony. The excluded record would have shown conclusively that every material fact stated in the publication was untrue.

*Libel—Measure of damages.*

Where there is no evidence that defendant in a libel suit had actual malice in publishing the article complained of by the plaintiff, compensation for the injury done to the plaintiff's character is the only legal measure of damages for which a recovery can be had.

*Libel—Privileged communication—Burden of proof.*

A communication to be privileged, must be made on a proper occasion, from a proper motive, and be based upon reasonable or probable cause. The immunity of a privileged communication is an exception, and he who relies upon an exception must prove all the facts necessary to bring himself within it.

It is not a privileged communication when a newspaper publishes that plaintiff "was arrested on a bailpiece," when an examination of the record would have disclosed that it was plaintiff who, as bail, had surrendered the real offender.

*Libel—Probable cause—Failure to examine record.*

Probable cause is not shown where a newspaper publishes a libelous

charge against a citizen on information from the attorney in a criminal case, where such information made further information necessary to warrant a cautious man in believing that the plaintiff was guilty of any offense.

A cursory and insufficient examination of the record will not exempt from the charge of carelessness when a more particular investigation would have elicited the whole truth; still more is defendant responsible if he neglects to examine an available record choosing rather to remain in ignorance when he might have obtained full information.

Argued Nov. 11, 1897. Appeal, No. 35, Oct. T., 1897, by defendant, from judgment of C. P. Lancaster Co., Sept. T., 1893, No. 3, on verdict for plaintiff. Before RICE, P. J., BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Trespass sur libel. Before LIVINGSTON, P. J.
The facts sufficiently appear in the opinion of the court.
Verdict for plaintiff for $650. Defendant appealed.

*Errors assigned* were, inter alia (1, 2) In admitting, under objection, the following questions to witness for plaintiff, for the purpose of showing the amount of damages involved: " Q. What was the circulation of the Morning News at that time—15th of August, 1893? A. About 3,500. Q. Did it or not circulate generally in this city and county? A. It did." (3) In overruling the following question by defendant in cross-examination of the plaintiff: "Defendant offers. to ask the witness if there was not a prosecution against Howard Lehman for malicious mischief and cruelty to animals, and whether Mr. Collins, John Cassidy and Behny Ross were not his bail for his appearance, and whether or not they hadn't taken out a bailpiece for him by Mr. Collins." (5–10) The substance of these assignments were errors assigned in disallowing, upon objection by the plaintiff, offers of defendant to prove by the records of the quarter sessions that one Lehman was charged with malicious mischief and cruelty to animals, and that plaintiff and others were sureties on the recognizance given by him before the magistrate to appear at quarter sessions. That a bailpiece was taken out in this case by plaintiff for the body of said Lehman; to be followed by evidence that the reporter of the News had understood from information received from B. F. Davis, counsel for

plaintiff, that this bailpiece had been taken out for the arrest of said Collins and in pursuance of that information so obtained, the reporter caused a local item, which is the subject of this suit, to be published in the Morning News. (12) In answer to plaintiff's second point, as follows: "2. The uncontradicted evidence in this case is that the publication made was untrue. It is not privileged. It is libelous per se. It is actionable, and, therefore, it is presumed to be malicious. *Answer:* That is, malice in law. It is not shown. It is denied there was any actual malice on the part of the defendant here in this publication, and no proof." (14) In answer to plaintiff's fourth point: "4. Where the words published are in themselves actionable, libelous and untrue, evidence need not be given of malice. The publication is presumed to be malicious. *Answer:* That is what I have stated to you in the general charge." (15) In answer to plaintiff's fifth point: "5. The publisher of a newspaper and his reporters are bound to use extreme diligence to ascertain whether or not libelous matter which they publish is true, and when the publication and untruth of such matter are shown, they are required to prove extreme diligence to ascertain its truth before they are exempted from damages for such publication. *Answer:* We say that the publisher of a newspaper and his reporters are bound to use due care, reasonable care and diligence to ascertain whether the matter is libelous or not, libelous or true. And when the publication and untruth of such matter are shown, they are required to prove reasonable diligence and care to ascertain its truthfulness before they can be exempted from damages for such publication." (16) In answer to plaintiff's sixth point: "6. Under the law and the evidence the verdict must be for the plaintiff for such amount as will compensate him for the damages he has suffered; and for malice or reckless negligence if proved, punitive damages may be awarded. *Answer:* That may be affirmed. That would be the correct method of getting at it, provided he has not used proper care and diligence." (18) In charging the jury as follows: "And where there are several charges, it is said in Murr v. Book, several distinct charges, some privileged and some not privileged, those that are not privileged are not justified by the charges which are privileged. Where an article is libelous in itself, is not privileged in its character, pub-

lishers failing to establish its truthfulness are liable for damages, and if the communication contains expressions which exceed the limits of privilege, such expressions are evidence of malice, and the case must be given to the jury. Wherever one publishes words which injure the reputation of another he must be taken to have intended the consequence naturally resulting therefrom. Malice is an essential element, but whenever a wilful, unprivileged publication is made embodying the other qualities of libel, legal malice may be inferred. Falsehoods are never privileged, and reasonable cause to believe the libelous charge to be true is no defense for its publication. The defendant in this case admits the publication was untrue, and states the fact that the next morning, as was read to you from their next morning's paper, they attempted to correct the error they had made the day previous without any request on the part of Mr. Collins. This is not in any sense a privileged communication. It is not a report of a judicial proceeding. There were no proceedings against Mr. Collins in this court, and none shown to be. There was no suit in court against him. He had not been held to answer to the crimes stated, malicious mischief and cruelty to animals. He had not given bail for his appearance to answer such charges. He had not been arrested on a bailpiece, and was not then put to jail, was not in jail. So that none of the charges against him in this paper were true. That is admitted by the attempt to correct the next day after they saw they were not true."

*George Nauman* and *H. M. North*, with them *T. B. Holahan* and *Eugene G. Smith*, for appellant.—The article in question was a privileged communication: Briggs v. Garrett, 111 Pa. 404; Jackson v. Pittsburg Times, 152 Pa. 406.

A reasonable ground of suspicion, supported by circumstances sufficient to warrant a cautious man to believe that the party was guilty of the offense, is the basis for a privileged communication: Coates v. Wallace, 4 Pa. Superior Ct. 253.

The defendant had undoubted right to prove the circumstances upon which probable cause of belief was based, with the source of its information, as the latter bore on the good faith of its inquiry: Conroy v. Times, 139 Pa. 334.

*J. Hay Brown* and *W. U. Hensel*, for appellee.—The fact that

one man is arraigned in court for a criminal offense certainly gives a newspaper no right to say that some other man had been so arraigned: Odgers on Slander and Libel, 187, *248; Shelly v. Dampman, 1 Pa. Superior Ct. 115; Ingram v. Reed, 41 W. N. C. 123.

The case at bar does not respond to the criterion of privilege as laid down by Thayer, P. J., in McKay v. McClure, 3 W. N. C. 58. See also Godshalk v. Metzgar, 23 W. N. C. 541; Press Co. v. Stewart, 119 Pa. 584; Collins v. Publishing Co., 152 Pa. 187; Seip v. Deshler, 170 Pa. 234; O'Toole v. Pittsburg Post, 179 Pa. 271.

Opinion by Orlady, J., January 18, 1898:

The defendant published in its newspaper, the following: "Arrested on a Bail Piece. There are suits pending against R. C. Collins, John Cassidy and Behny Ross for malicious mischief and cruelty to animals, which will be tried at next week court. It was feared last evening that R. C. Collins would leave this locality and not turn up for trial. In consequence a bail piece was issued and he was committed to jail to await trial, unless he secures other bail." On the day after this publication, the following appeared in the same newspaper: " A provoking Error. 'Through a mix of names The Morning News yesterday stated that R. C. Collins, John Cassidy and Behny Ross had suits pending against them for cruelty to animals and malicious mischief, and that R. C. Collins had been arrested on a bail piece. Of course the public will understand that the item was a provoking error, and that such honorable and well known gentlemen are not defendants at all in any suit. The fact of the matter is that they are bondsmen for one Howard Lehman, who stands charged with the above offenses, and they surrendered their bail, taking out a bail piece, upon which he was arrested."

This action was instituted the same day that the alleged libel was published, and resulted in a verdict in favor of the plaintiff.

It was not contended on the trial that the article was maliciously published, and the defendant's second point was affirmed. "As there is no evidence that the defendant in this case had actual malice in publishing the article complained of by the plaintiff, compensation for the injury done to the plaintiff's character is the only legal measure of damages for which a recovery could be had in any event."

The evidence represented by the third, fourth, fifth, sixth, seventh, eighth, ninth and tenth assignments of error was properly excluded, as it was not pretended that the publication was based upon the knowledge of the facts as shown by the rejected testimony. A proper examination of the record suggested in the several offers, or knowledge by the defendant of the facts as stated, previous to the publication, would have made it designedly malicious. The excluded record would have shown conclusively that every material fact stated in the publication was untrue. The published retraction declares the plaintiff to be " an honorable and well known gentleman," and " of course the public will understand that the item was a provoking error." It is only when grave mistakes are made that newspapers so frankly declare that their news items are to be disbelieved. The only substantive question in the case was one of fact; was the publication of this admittedly erroneous statement made after a proper inquiry into the facts as therein detailed by the newspaper reporter?

The reporter was a member of the bar, and by reason of his professional learning had special knowledge of the place in which to make search for the truth or falsity of the facts given. The investigation of the case could have been as easily made, prior to the publication as after, and if made, would have disclosed the facts to be as stated in the retraction and as found on the trial. There was no pending proceeding against the plaintiff; he had not been held to answer; he had not given bail for his appearance; he had not been arrested on a bail piece; he was not put to jail; and no one feared or said he feared that " he would leave the locality and not turn up for trial; " all of which was discovered within a few hours after the publication, and the defendants admit each and every one of the prejudicial facts to be untrue.

The reporter relied upon a brief and hurried interview with an attorney, which, from his testimony was incomplete and confusing as to the true relation of the plaintiff to the case about which the inquiry was made. The conversation with the attorney, under the facts of the case, instead of furnishing a reasonable and probable cause for the publication rather made a further examination necessary to warrant a cautious man in believing that the plaintiff was guilty of any offense.

It was not a privileged communication. The authorities on which the appellant relies to sustain the argument that it was such, are considered in Coates v. Wallace, 4 Pa. Superior Ct. 253, and cannot relieve the defendant in this case. It is not sufficient that the defendant believed the facts to be true at the time of publication; the belief must have rested on reasonable and probable cause: Winebiddle v. Porterfield, 9 Pa. 137; Chapman v. Calder, 14 Pa. 365; Smith v. Ege, 52 Pa. 419.

In Godshalk v. Metzgar, 23 W. N. C. 541, an offer was made of a record of a suit, not in justification, but to show probable cause, and rejected; the court saying: " The reporter may have written this paragraph for the purpose of giving spice to his paper, or from other motives. It is true no offense is named, but it.is idle to say that a statement that a man has been arrested and committed to the county prison in default of bail does not mean anything, it means a great deal, and is the more damaging from what it leaves unsaid." In Ingram v. Reed, 5 Pa. Superior Ct. 550, this court held, under facts more favorable to the defendant than in the present case, that even a cursory and superficial examination of a record, will not relieve or exempt from the charge of carelessness, when a more particular investigation of the record or case would have elicited the whole truth. The zeal of the reporter for sensational news must be curbed by a careful investigation of the accessible facts which would throw light upon the subject-matter before the reading public is furnished with that which may be proper.

This is the requirement of the law, and has been so recognized in all the cases in which the question has been raised. If indeed there were means at hand for ascertaining the truth of the matter of which the defendant neglects to avail himself and chooses rather to remain in ignorance when he might have obtained full information, there will be no pretense of any claim of privilege : Shelly v. Dampman, 1 Pa. Superior Ct. 115; Conroy v. Times, 139 Pa. 334.

In the light of the facts in this case, the numerous decisions of the Supreme and Superior Courts stamp the article "Arrested on a Bail Piece " as entirely outside the pale of privileged communications, and that it was published without reasonable or probable cause of the truth of its facts. The assignments of error are overruled and the judgment is affirmed.