2 U.S. 58
 2 Dall. 58
 1 L.Ed. 288
 Rue
v.
Mitchell
 Philadelphia Court of Common Pleas
 August Sittings, 1790
 2 U.S. 58
 2 Dall. 58
 1 L.Ed. 288
 Rue
 
 1
 v.
 
 Mitchell
 Philadelphia Court of Common Pleas
 August Sittings, 1790
 
 2
 This was an action of slander; for pronouncing the words set forth by the declaration, in the following form, after the general introduction and averments, respecting the plaintiff's good sameand character: 'That the defendant published, then and there, the following false, scandalous, lying, English words, of the plaintiff, in the hearing, &c. to wit, You (him the said plaintiff, meaning) have taken a false oath, before squire Rush, (meaning that the said plaintiff had committed the crime of perjury, in a certain oath, by the said plaintiff, then lately taken, before William Rush, Esq. one of the Justices of the Peace, &c. in and for the City and County of Philadelphia, in a cause before the said Justice, depending) and I (himself the said defendant meaning) can prove it. By reason whereof, &c.'
 
 
 3
 It appeared, on the trial of the cause, that the oath in question was voluntarily taken by the plaintiff, in order to satisfy the defendant upon a controverted fact, involved in the suit depending before the Justice, and in which the situation of the present parties was reversed: Mitchell, being then the plaintiff, and Rue, the defendant. There was a verdict for the plaintiff, with damages; but the cause was again brought before the Court, on a motion in arrest of judgment, which was founded on two grounds: 1st. That the words charged in the declaration, did not import perjury, in a legal acceptation of their meaning; and therefore did not, in themselves, independent of any injurious consequence to the plaintiff, render the speaker liable to an action at law. And, 2nd. That the oath does not appear, in the declaration, to have been of a nature, that by taking it the party could commit the legal crime of perjury.
 
 
 4
 I. M'Kean. J. B. in support of the motion, observed, that actions of slander ought not to be encouraged; and that they had hitherto been strictly confined to cases, which endanger a man in law; which exclude him from society; which impair the exercise and benefit of his trade or profession; or, which may affect magistrates, or other persons, employed in public trusts. There is no special damage laid in the declaration; and to alledge, that a man has forsworn himself generally, is not actionable; because he may be forsworn in common conversation; or, it may be an expression of mere passion and anger. 4. Co. 15. b. nor shall it be intended to refer to a case where perjury may be committed. I Com. Dig. 192.
 
 
 5
 II. But, in the next place, the oath must appear to have been a lawful one, administered in the course of a judicial proceeding, upon a matter material to the issue on trial. 2 Bulst. 150. The oath, in question, was merely a voluntary affidavit; and that, too, taken by a man in his own cause; which can never judicially be allowed: The Justice could not have compelled him, and ought not to have permitted him, to take it. I Hawk. P. C. 174-5. 4 Bac. Abr. 484. For that cause alone, the judgments of Justices have often been reversed in the Supreme Court; and the act of taking, or administering, voluntary affidavits, is highly censured by Sir William Blackstone, 4 Bl. Com. 137. Nor in favour of this species of action will there be any intendment, that the suit was depending before a proper tribunal. 4 Co.16 b. An inuendo is not, in itself, sufficient to show that Rush was a Justice, and had authority in the cause. Yelv. 21. 3 Lev. 166. 4. Co.17. 5. Burr. 2700.
 
 
 6
 Serjeant, for the plaintiff, arguing in support of the verdict, said, that in modern times, a very salutary change had taken place in the doctrine, respecting actions of slander; which were now liberally encouraged, with a view to the correction of licentiousness, and the preservation of peace. 4 Bac. Abr. 497. 505. 506. Nice exceptions are never allowed to prevail, against a reasonable interpretation and common understanding of the slander. 2. Wils. 87. 114. 300. The words shall be taken in the same sense, as they would be understood, by those who hear or read them. Bull. N. P. 3. 4. But as the Jury have passed upon the subject, the inuendoes must be taken to be true. It is too late, therefore, to contend, that the words do not import a charge of perjury: The verdict establishes that point, and the competency of the jurisdiction of the Justice, as well as the malice and falsehood of the slander.
 
 
 7
 The President delivered the opinion of the Court, in the following terms.
 
 
 8
 Shippen, President.
 
 
 9
 The sense in which words are received by the world, is the sense which Courts of Justice ought to ascribe to them, on the trial of actions for slander. Slander imports an injury; and the injury must arise from the manner in which the slanderous language is understood.
 
 
 10
 The words, in the present case, certainly import a crime; and the inuendo (which the Jury have found to be true, and which, therefore must govern our interpretation of the fact) shows that the reference was not to a matter of common conversation, but to an act committed before a Justice of the Peace, in relation to a cause actually depending.
 
 
 11
 Generally speaking, indeed, actions of slander, founded on triffling causes, to gratify a petulant and quarrelsome disposition, will not be encouraged by the Court: But, when the reputation, trade, or profession, of a citizen it really affected, for the sake of doing justice to the dearest interests of individuals, as well as for the sake of preserving public order and tranquillity, every appeal to the tribunals of our country ought to be liberally sustained.
 
 
 12
 Judgment for the Plaintiff.