MICHAEL CONROY v. PITTSBURGH TIMES.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued November 7, 1890—Decided January 5, 1891.

1. A privileged communication* is one made upon a proper occasion, from a proper motive, and based upon reasonable or probable cause: Briggs v. Garrett, 111 Pa. 404, 414; and also, perhaps, in a proper manner; for, if the manner be improper, the privilege is lost: Per Mr. Justice MITCHELL.

2. In such cases, there is no prima facie presumption of malice from the publication: there must be some evidence beyond it; either intrinsic, from the style and tone of the article, or extrinsic, as actual malice, known falsity, or want of probable cause; or, other evidence fairly tending to overcome the protection of the privilege.

3. Hence, where the publication charges upon the plaintiff the commission of an indictable offence, the presumption of the plaintiff's innocence of the offence is evidence that the publication is false and without probable cause, sufficient to put the defendant to proof of the facts to support his claim for the privilege.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 232 October Term 1890, Sup. Ct.; court below, No. 608 June Term 1887, C. P. No. 1.

On June 1, 1887, a summons was served in trespass brought by Michael Conroy against the Times Publishing Company, afterwards amended to the Pittsburgh Times.

---

* Id est, a defamatory publication, as to which the author or publisher is privileged from liability as for a libel :—REP.

On January 6, 1888, the plaintiff filed a statement of claim, verified by affidavit, setting forth that, on May 3, 1887, the defendant composed, printed and published, or caused to be composed, printed and published " in a certain newspaper, printed and published in the city of Pittsburgh, and circulated in and throughout western Pennsylvania, known as the Pittsburgh Times, a certain false, malicious and defamatory libel of and concerning the plaintiff, and of and concerning his business and his place of business in the city of Pittsburgh, of which the following is a copy : " . . . .

—A portion of the alleged libel, printed under the title, " The Dives Must Go," was as follows :

" At No. 2 Diamond square, Mike Conroy runs a joint that is every bit as bad as the one Tom O'Brien used to run. In no way has he been put out by Mayor McCallin's demonstration in favor of morality and good order. The low characters that have been barred out of the other places in the vicinity, all flock into Conroy's and are made welcome. A one-legged dancer has been employed and makes the night hideous in his attempts to keep time to the jangling of the wretched instrument that was once a piano. Conroy also has a habit of closing his front doors about midnight, and keeping the crowd in the back room until near morning, or until they run short of money or his beer gives out. Every night at his place can be seen thieves, sand-baggers, pickpockets and the lowest of abandoned women. The one-legged clog dancer employed in this place is a noted crook. He has served several years in the penitentiary for highway robbery, and has only been at liberty a few months. Conroy need not be surprised to see a delegation of Mayor McCallin's police walk down that way some time, and stay just long enough to do business with the proprietor and the inmates."

On April 24, 1890, the defendant pleaded, but the nature of the plea was not found in the paper-books.

At the trial on the date last mentioned, the plaintiff proved that, on May 3, 1887, he kept a saloon at No. 2 Diamond square, and was the Michael Conroy mentioned in the libelous article read from the Pittsburgh Times of that date. The plaintiff then proved the circulation of said newspaper, on the date referred to, and rested. Thereupon, counsel for defendant

moved the court for judgment of compulsory nonsuit, and in support of the motion assigned as a reason therefor, that the publication complained of was on its face proper for public information; that the publication was in the nature of a privileged communication, and therefore it was not sufficient for the plaintiff to offer the article and rest, but before a recovery could be had, on the part of the plaintiff, it was necessary that he should go further, and prove that there was either malice in the publication of the article, or that the article was so flagrantly unjust and untrue that malice would be implied.

By the court, SLAGLE, J.: Motion allowed, with leave, etc.

A rule to show cause why the judgment of nonsuit should not be taken off having been argued, the court, SLAGLE, J., on September 17, 1890, filed the following opinion:

This was an action on the case for libel. Upon the trial, the plaintiff offered in evidence a copy of a newspaper containing the libelous matter, which was admitted to have been published by defendants; showed the extent of circulation; then called the plaintiff, who testified that he was the person referred to, and rested. Plaintiff was not asked as to the truth of the charges. The defendant then moved for a compulsory nonsuit, which was granted. The article complained of, charged that " Mike Conroy runs a joint, the resort of thieves, sand-baggers, pickpockets, and the lowest of abandoned women," with other matters of a similar character.

The only question in the case is, whether it was incumbent upon the plaintiff to show malice; or, upon the defendant, to rebut the presumption of malice, by showing that the charges were true, or that they had reasonable grounds to believe them to be true, and proper motives for their publication. This depends upon the question, whether or not the matter is privileged? If it is not privileged, malice would be presumed, and the only defence would be justification, under which the defendant would be bound to show that the allegations were true, and this by clear and satisfactory evidence.

Was this a privileged communication? The plaintiff was the proprietor of a public house; kept, ostensibly, for the accommodation of the public. The defendants were publishers of a public newspaper. As appears from the article, as set

forth in the statement, they had been engaged in hunting out and exposing persons engaged in disreputable business such as that alleged to be carried on by plaintiff.

"It is entirely within the bounds of legitimate journalism for newspapers to publish as current news all such matters as involve open violation of law, or public misconduct of such character as justifies police interference:" Urben v. Pittsburgh Times, 1 Mona. 135. "It is sufficient to confer the privilege, that the matter is of public interest to the community:" Briggs v. Garrett, 111 Pa. 415; Brett v. Watson, 20 Weekly R. 723. The plaintiff was asking the public to partake of his entertainment, and it was therefore proper that the public should know to what kind of entertainment they were invited; and the language of Chief Justice PAXSON in Press Co. v. Stewart, 119 Pa. 603, applies with equal if not greater force to this case: "If we are asked why this article is privileged, I answer, because it was proper for public information." The community is deeply interested in the suppression of such nuisances; and notoriety tends to this end, not only by warning the thoughtless from visiting them, but by stimulating the police to a proper discharge of their duties.

If such publication is not privileged, it is because it is not "matter proper for public investigation or information." In such case, the publisher may successfully defend a civil action by proving the truth of the charge, but even the truth would not avail as a defence to a criminal prosecution. Surely, it cannot be that the publisher of a public newspaper may be fined and imprisoned for calling attention to the existence of such plague spots in the community, when the truth of the charge is admitted. If he cannot be so punished it is only because the "matter is proper for public investigation or information:" § 7, article I., constitution of 1874. If it is, under the authorities before cited, it is privileged.

If the publication was privileged, in order to recover it was incumbent on the plaintiff "to show that it was not true, and that defendant had no reasonable ground to believe that it was true:" McIntyre v. Bean,* 13 U. C., Q. B., 540. He must

---

*In the opinion, as printed in the paper-books, this case was so cited; in the appellee's argument it was cited, "McIntyre v. McBean." See foot-note, ante, 300.

Opinion of the Court.

prove malice: Gray v. Pentland, 4 S. & R. 422; Flitcraft v. Jenks, 3 Wh. 158; Neeb v. Hope, 111 Pa. 154; Briggs v. Garrett, 111 Pa. 413, 415; Press Co. v. Stewart, 119 Pa. 603.

The nonsuit was properly ordered, and the motion to take it off must be refused; exception.

—Thereupon, the plaintiff took this appeal, specifying the orders entering the judgment of nonsuit and refusing to take off the judgment, for error.

*Mr. Thos. M. Marshall, Jr.,* (with him *Mr. William Reardon*), for the appellant.

Counsel cited: MacClean v. Scripps, 52 Mich. 247; Neeb v. Hope, 111 Pa. 145; Briggs v. Garrett, 111 Pa. 404; Urben v. Pittsburgh Times, 1 Mona. 135.

*Mr. George C. Wilson* (with him *Mr. George B. Gordon* and *Mr. S. H. Shannon*), for the appellee.

Other than cases cited by the appellant, counsel cited: Press Co. v. Stewart, 119 Pa. 584; McIntyre v. McBean, 13 U. C., Q. B., 540; Gray v. Pentland, 4 S. & R. 422; Flitcraft v. Jenks, 3 Wh. 158.

OPINION, MR. JUSTICE MITCHELL:

A privileged communication is defined as one made upon a proper occasion, from a proper motive, and based upon reasonable or probable cause: Briggs v. Garrett, 111 Pa. 404, 414. Perhaps there ought also to be added, that it should be made in a proper manner, for if the manner be improper the privilege is lost. The publication complained of by appellant charges an indictable offence, and is libelous per se. It may be conceded that it belongs to the class of qualified privilege. In such cases it is common to say that the plaintiff must prove express malice. I apprehend, however, that the more accurate statement of the law is that in such cases there is no prima facie presumption of malice from publication. There must be some evidence beyond the mere fact of publication, but there is no requirement as to what the form of the evidence shall be. It may be intrinsic, from the style and tone of the article. "If the communication contains expressions which exceed the limits of privilege, such expressions are evidence of malice, and

the case shall be given to the jury : " TRUNKEY, J., in Neeb v. Hope, 111 Pa. 145, 154.   Or it may be extrinsic, as by proof of actual malice, or that the statement was knowingly false, or that it was made without probable cause, or in any way that fairly and reasonably tends to overcome the prima facie presumption of protection under the privilege.   One of such ways is by the counter-presumption of innocence.   "Probable cause that would justify such publication" (charging larceny) "would justify a prosecution for the alleged crime:" Neeb v. Hope, 111 Pa. 153.   And the reason for it is that the presumption of innocence cannot be overcome by mere rumor, or idle report, or careless and insufficient examination set up as probable cause.   So, where the alleged libel charges an indictable offence, the presumption of innocence ought and must stand as prima facie evidence of falsity and want of probable cause, and therefore of malice, even in cases of a claim of privilege.

A brief consideration of two fundamental principles will be sufficient to sustain this result.   First, the immunity of a privileged communication is an exception.   The general rule is that nothing but proof of its truth is a defence of a libel. That it was privileged, because published on a proper occasion, from a proper motive, and upon probable cause, is the excepted case, and he who relies on an exception must prove all the facts necessary to bring himself within it.   Secondly, unless his action is founded on a negative averment, a plaintiff is not in general obliged to prove a negative, and the inconveniences of a departure from this rule are many.   For example, in cases like the present, how is a plaintiff to proceed?   Actual or special malice can rarely be proved; in fact, it rarely exists. Libelous articles in newspapers seldom spring from any hostility to the individual, but usually from a ruthless disregard of personal feelings and private rights, in the mad hunt for news and sensations.   The only chance of redress for the plaintiff, therefore, is, ordinarily, the want of probable cause; and how is he to prove this?   It was held in Flitcraft v. Jenks, 3 Wh. 158, that he could not do it by evidence of good character and the consequent improbability of his doing the act charged; and how is he to prove specific facts in the dark, before the facts relied on as probable cause are shown by defendant?   The natural and logical order of proof is for defendant

Opinion of the Court.

to show the information on which he relied for probable cause, and for the plaintiff then to meet it in rebuttal. And this is the order that seems to be indicated by BRACKENRIDGE, J., in Gray v. Pentland, 2 S. & R. 23: " The plaintiff may, if he chooses, either in the first instance, with a view to aggravate damages, go on to show express malice; or, after an attempt by the defendant to show probable cause, he may rebut this by proof of express malice." It is true that actions like the present are closely assimilated to actions for malicious prosecution, in which the plaintiff must give evidence of want of probable cause. But, the latter actions are founded on the want of probable cause; it is an essential element of plaintiff's case; while, in actions of libel, it is an element not of plaintiff's case, but of defendant's claim of privilege.

The law, in cases of privilege, has been lenient to the claim, but it must not be allowed to become lax. Our own decisions have followed the general trend, in enlarging the class of qualified privilege, and giving a wide reach to its protecting mantle; but we do not regard any of them as in conflict with the reasoning herein followed. A brief reference to the most important of them will indicate our views in this respect. In Gray v. Pentland, 4 S. & R. 422, and Flitcraft v. Jenks, 3 Wh. 158, the publications were not libelous per se; in Chapman v. Calder, 14 Pa. 365, the evidence of probable cause was offered by defendant; in Pittock v. O'Niell, 63 Pa. 253, if there was any privilege in the publication at all, (and, speaking for myself only, I do not think there was,) it was lost by the nature of the comment, and the same is to be said of Barr v. Moore, 87 Pa. 385, and Neeb v. Hope, 111 Pa. 145; in Briggs v. Garrett, 111 Pa. 404, it was held that the letter of Lovegrove, given in evidence by plaintiff, sufficiently showed probable cause for defendant's action; and in Press Co. v. Stewart, 119 Pa. 584, the publication was held not to be libelous at all.

As a result, we are of opinion that where the publication charges an indictable offence, the presumption of innocence is prima facie evidence of falsity and want of probable cause, and sufficient to put defendant to proof of the facts to support his claim of privilege. It follows that this case should have been allowed to go to the jury.

Judgment reversed, and venire de novo awarded.