# WASHINGTON POST COMPANY *v.* WELLS.

### LIBEL; PRIVILEGED COMMUNICATIONS.

1. A newspaper article is libelous which falsely charges a person with being the proprietor of a gambling house, or of a building used for the purpose of gambling and for disorderly purposes. And the publication of such an article would seem to place the burden of proof of the truth of such charge upon the publisher.

2. While there is a class of communications which are privileged when made in good faith during the prosecution of inquiries regarding a crime that has been committed, a newspaper article stating that the police in investigating a murder have secured evidence that the crime was committed in a gambling resort, of which a certain person is the proprietor, without any intimation that such person is under suspicion or connected in any way with the crime, is not privileged.

No. 1647. Submitted April 11, 1906. Decided May 1, 1906.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia upon the verdict of a jury in an action of libel.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

· This appeal is taken from a judgment rendered on a verdict in favor of the appellee, William L. Wells.

The appellant, the Washington Post Company, a corporation publishing a newspaper in the city of Washington, received from its correspondent at Norfolk, Virginia, the article complained of as libelous, and in due course published it. · The article relates to a murder committed in January, 1903, in the city of Norfolk. It purports to give the name and antecedents of the murdered man; such facts as could be gathered of the circumstances surrounding the commission of the crime; the place where it was committed; the arrest of certain named persons; and expresses confidence that the police will unveil the mystery and discover the murderer. It is that part of the article which purports to state the place where the act was committed that brings in appellee's name, and contains the alleged libelous matter. That place is first named as "a house on Church street, or next door, in the 'Tivoli,' a gambling resort." Later on the article says: "The police to-night succeeded in securing evidence that the murder occurred in the Tivoli building. The proprietor of the Tivoli is Monte Wells, alias 'Father Wells,' who is said to be well known in Washington, which is his home. The remainder of the building is occupied by the notorious Tivoli gamblers and the Hill woman as a gambling and disorderly house."

The evidence shows that appellee is the one referred to as "Monte Wells," alias "Father Wells," and as to that there is no question. It is also shown that he was not the owner or proprietor of the Tivoli, or Tivoli building, but had helped out behind the bar; that he had no connection with the "Tivoli." Publication of the article having been shown, the plaintiff rested. The defendant moved the court to instruct the jury to return a verdict for the defendant, on the ground that the article was

not libelous at all upon the plaintiff. The motion was overruled and an exception taken. The defendant thereupon called the writer of the article, who testified that it was written while he was investigating the murder, following up the efforts of the police, and trying to locate the criminal; that he was informed that plaintiff was the proprietor of the Tivoli saloon; and that the Tivoli building consisted of three parts under one roof, one being occupied as a saloon, another as an assignation house, and the third as the headquarters of what were known as the Tivoli gamblers. The testimony relative to the building and its uses was corroborated by a police detective. At the conclusion of all of the testimony the motion to direct the jury to render a verdict for defendant, on the ground that the article sued upon was not libelous upon the plaintiff, was renewed, denied, and an exception taken by defendant.

The jury found for the plaintiff in the sum of $100.

*Mr. Chapin Brown* and *Mr. J. P. Earnest* for the appellant.

*Mr. Andrew A. Lipscomb* for the appellee.

Mr. Justice Duell delivered the opinion of the Court:

There is but one question presented by this appeal, although the assignment of error as stated is in form two fold,—that the court below erred in instructing the jury that the article was a libel upon the plaintiff, and that it was error to refuse to grant the motion for the direction of a verdict for defendant. It does not directly appear what instruction the court gave the jury, but the refusal of the court to direct a verdict for defendant was tantamount to such an instruction. The question at issue, however, is clearly enough presented in assigning error in the refusal of the court to direct a verdict for the defendant. If the article was not a libel upon plaintiff, then the motion should have been granted. Appellant's counsel state in their brief that the only question here is whether the article complained of is, as a matter of law, a libel upon appellee.

We are clearly of the opinion that the article is a libel upon the appellee, and is so when viewed in its natural and obvious sense. No extrinsic evidence is required to determine that it is actionable. Taking the article in its entirety, and giving the ordinary meaning to the words employed which refer to the appellee, it is apparent that the appellee is charged with being the proprietor of the Tivoli, which is stated to be "a gambling resort." The charge that the appellee is the proprietor of the Tivoli follows the statement that the murder was committed in the Tivoli building; but when the article is considered as a whole, as it should be (18 Am. &. Eng. Enc. Law, p. 983, and cases then cited), the proprietorship refers to the so-called Tivoli gambling resort, rather than to the Tivoli building, but as it is said, in referring to that building, that "the remainder of the building is occupied by the notorious Tivoli gamblers and the Hill woman as a gambling and disorderly house," we fail to apprehend how the position of the appellant is improved, whether the proprietorship alleged be of the Tivoli or the Tivoli building. To charge a person with being the proprietor of a gambling house, or of a building used for the purpose of gambling and for disorderly purposes, seems to be equally actionable. The appellee proved the publication of the article complained of, and also proved that he was not the owner or proprietor of the Tivoli. It would seem that his proofs went further than necessary. No evidence was given by appellant showing, or tending to show, that the appellee was the proprietor of the Tivoli gambling house, or of the Tivoli building, or of any part of it. In *Conroy* v. *Pittsburgh Times*, 139 Pa. 334, 11 L. R. A. 725, 23 Am. St. Rep. 188, 21 Atl. 154, proof of publication of an article of the same general character as the one here complained of was held sufficient to place the burden on the defendant to show the truth of the publication. In the absence of any proof connecting appellee with the place referred to, it would seem unnecessary to discuss what is the meaning of the term "proprietor," for appellee is not shown to have had any interest in the building, or in any business carried on in it.

It is further contended by appellant that the article sued upon is a privileged communication. It is urged that a murder having been committed, and that appellant, through its representative, being engaged in assisting to discover the criminal, had a right to publish the article complained of under the rule of "qualified privileges." While it is undoubtedly true that there is a class of communications which are privileged when made in good faith during the prosecution of inquiries regarding a committed crime, we do not think that the publication in question comes within that rule. That the article was furnished and published in good faith the jury evidently believed, as shown by the amount of the verdict. We agree with them on this point. But it appears to us that the reporter, in his zeal to furnish a sensational article and one giving it a local color, gratuitously dragged in the appellee's name, and that he was well known in Washington. This reference in no way tended to the discovery of the criminal, for there is not the slightest intimation that the appellee was under suspicion, or connected in any way with the crime. A man has sunk very low in the social scale when such a statement as that made about the appellee will not to some extent disgrace or degrade him and injure his reputation. That the jury thought such injury was slight is quite apparent. Such statements falsely made of most people would inflict an injury not measurable in dollars and cents.

The article was libelous on its face, and the court could not have rightfully directed a verdict at the close of plaintiff's case. Defendant failed utterly to prove the truth of the statements made relative to the plaintiff, and it therefore became the duty of the trial justice to submit the case to the jury. The plaintiff was entitled to a verdict for at least nominal damages, and it was for the jury to say whether more than nominal damages should be given plaintiff.

Finding no reversible error in the proceedings on the trial, the judgment will be affirmed, with costs. It is so ordered.

*Affirmed.*