# McGeary *v.* Leader Publishing Company, Appellant.

*Libel—Pleading—Statement of claim—Innuendo—Malice—Privilege of publication—Newspaper—Probable cause.*

1. Where a statement of claim in libel charges that the defendant in its newspaper published large, red, flaming headlines stating that plaintiff had been arrested and held for kicking a pregnant woman, below which was printed the picture of the plaintiff with his name under the picture, the statement substantially alleges that the publication was of and concerning the plaintiff, and it is not fatally defective because it does not allege in so many words that the publication was of and concerning the plaintiff.

2. By pleading the general issue in an action of trespass for libel, and going to trial thereon, the defendant waives all defects in his statement of claim that are not fundamental. Hence, if without an innuendo, the substance of a good cause of action is shown on the record, the objection that it was not stated as specifically and with as much precision as the defendant might have demanded, is waived by proceeding to trial on the merits.

3. A writer is accountable for the import of the words which he uses as they would naturally be understood by the hearer or reader. Ingenuity is not to be resorted to in order to ascribe to them either the more lenient or the more severe sense, but they are to be taken in the sense that fairly belongs to them, that is, in the plain and popular sense in which the rest of the world naturally understands them.

4. The office of an innuendo is to aver the meaning of the language published, but if the common understanding of mankind takes hold of the published words, and at once, without difficulty or doubt applies a libelous meaning to them, an innuendo is not needed, and if used may be treated as useless surplusage.

5. In an action for libel the publication contained large headlines referring to the plaintiff as follows: "McGeary with party arrested for kicking woman who now lies near to death," "Jesse McGeary, former coroner, held in case of assault on woman which may result in death of victim and child." There was no innuendo. The defendant pleaded

the general issue, and went to trial. *Held*, (1) that the jury was warranted in interpreting the words to mean that the plaintiff was a participant in an assault and battery upon a woman, and (2) that the absence of an innuendo in the statement was immaterial.

6. While a fair account of a transaction which is the basis of a newspaper publication may be privileged the manner and style of the account and comment are for the consideration of the jury to determine if the privilege had been exceeded.

7. Where the words of a publication impute the commission of an indictable offense the presumption of innocence is prima facie evidence of falsity, and want of probable cause, and sufficient to put defendant to proof of the facts to support his claim of privilege; and this is especially the case where the plaintiff does not rely on the presumption, but produces evidence to show that the charge was false.

8. It is within the bounds of legitimate journalism for newspapers to publish as current news all such matters as involve open violation of law or public misconduct of such character as justifies police interference, even though the doing so may reflect upon the actors, and thus tend to bring them into public disgrace or contempt; but in such case it is not enough that the occasion supplied one element of the immunity of privilege, and that the privilege was not exceeded by the manner of publication. It is still incumbent on the defendant to prove that he had reasonable or probable cause.

9. A probable cause that will warrant belief must be found in circumstances of adequate, probative force, lying within personal knowledge or information derived from sources of such a character as to lead a reasonably prudent man to regard it as trustworthy. It is for the jury to determine what the information was, what were the sources from which it was obtained, whether the publication conformed with the information received, and whether the defendant had exercised care and diligence to ascertain the truth. Thus where a reporters' information is based on a statement made to him by a policeman, and the latter's information came from a communication made by a third party to him, it is for the jury to determine whether there was negligence on the part of the defendant in failing to make an inquiry of the plaintiff and others as to the truth of a publication charging the plaintiff with the crime.

Argued May 9, 1912. Appeal, No. 172, April T., 1912, by defendant, from judgment of C. P. No. 1, Allegheny Co., March T., 1909, No. 232, on verdict for plaintiff in case of Jesse M. McGeary v. Leader Publishing Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Trespass to recover damages for libel.   Before Mac-
FARLANE, J.

The headlines and the first four paragraphs of the pub-
lication sued upon were as follows:

MCGEARY WITH PARTY ARRESTED FOR KICKING WOMAN
### Who Now Lies Near To Death
### Babe's Life Pays Price For Mother

Jesse McGeary, Former Coroner, Held in Case of Assault
on Woman Which May Result in Death of
Victim and Child
### Shriek Over the Wire

"Central call the ——! Don't kill me!  For God's
sake, don't kick me any more, and take two lives!

" A telephone girl heard the shriek over the wires at 4
o'clock this morning at her switchboard and, with quick
intuition, tried to find out the trouble.   She distinctly
heard a crash, shriek, then the receiver was snapped down.
She hunted up the source of the call, notified Central
police station, where Policemen William Williamson and
Myers were rushed to the saloon of A. S. Huselein, 510
Grant  Street.

" There they found the scene of a brutal attack on Mrs.
Minnie Huselein, wife of the saloonkeeper, who was lying
unconscious on the floor near the telephone with her hus-
band, A. S. Huselein, Jesse McGeary, formerly coroner
of Allegheny county, and C. S. Stolosksky, said to be a
fictitious name, intoxicated, and in the saloon.

" The woman, in a delicate condition, had been brutally
kicked about the body and was hurried in a patrol wagon
to the Homeopathic hospital, where it is said that it is
doubtful if her life can be saved.   If it is, that of her un-
born child will pay the penalty. . . ."

Defendant presented these points.

2. That the publication complained of is privileged and
the burden is upon the plaintiff to prove express malice;
and if the jury find from the evidence that there was no

express malice on the part of the defendant, then their verdict must be in favor of defendant. *Answer:* Refused. [2]

3. It is entirely within the bounds of legitimate journalism for newspapers to publish as current news all such matters as involve open violation of law or public misconduct of such character as justifies police interference, even though the doing so may reflect upon the actors and thus tend to bring them into public disgrace or contempt, and if the jury finds that the publications complained of in this suit were published as current news of such matters as involve open violation of law or public misconduct of such character as justifies police interference, the verdict must be for the defendant, even though such publication may reflect upon the plaintiff. *Answer*: Refused. [3]

4. If the jury find from the evidence that the police department were informed of, or heard cries for help and statements indicating an assault at the saloon of A. S. Huselein, in the early morning, approximately three or four o'clock of the morning of the publication, such cries justify police interference, and the publication thereof and of the matters that occurred in connection therewith is proper for public information, and their verdict should be for the defendant. *Answer:* Refused. [4]

5. It is immaterial whether Mrs. Huselein was kicked or beaten on the morning of October 7, 1908, but if the defendant was informed by the police officers that Mrs. Huselein had stated that she was attacked and beaten; if it had been informed that she made cries for help, and in pursuance of those cries the police department responded and arrested the plaintiff, together with Huselein; and if they further believe that he was informed by those police officers that she was kicked, and that the plaintiff and the other persons present, including plaintiff, held her while her husband, Huselein, had kicked her, and if upon such information, and in good faith, honestly believing the same to be true, defendant made the publication complained of, then their verdict must be for the defendant. *Answer:* Refused. [5]

6. If the jury find from the evidence that the defendant, prior to the publication complained of had been told by the police officers making the arrest at Huselein's place on the morning of October 7, 1908, that Mrs. Huselein had stated that plaintiff had assisted in holding her while her husband kicked her, and had been informed of her shrieks and calls for help heard over the telephone, then it was not bound to inquire of the plaintiff, or of Huselein in relation thereto, and its failure to do so is no evidence of malice.  *Answer:* Refused. [6]

The court charged in part as follows:
[You have heard talk about privileged publications. All that means, so far as these cases are concerned, is this. It is conceded here that the telephone receiver was down; it is conceded that the girl at the other end listened and heard something that she reported to the police department; that the police officers came to this place; that it was a licensed saloon, a public house; that the police officers arrested three men and took them down to the Central station; that a charge was made against one at least, and that they all came to the police department. Now, that was an occurrence which was a legitimate subject for newspaper publication, and a newspaper publisher has a perfect right to give an account of such an occurrence. If it is not a privileged publication he, of course, runs a very much bigger risk, but where it is a case of this kind he has a right to publish it, and he is not liable if the article is published properly and if he keeps within the limits of the privilege which he has in writing and publishing such an article. I might illustrate that principle by suggesting this very case. A newspaper publisher has a perfect right to report what is happening right here in this court room in the trial of these cases and what is happening now. He has a right to report and publish what is happening in councils of a city or a borough, or a church trial, and matters of that kind. Those are matters proper for public. information, and it is not necessary that you should decide

whether it is for the good of the public or not. Many things that are published probably from our standpoint are not for the good of the public, because the boys and girls get hold of them. But that is not the test. The test is whether it is a legitimate matter for publication. Now, this was, so that you have nothing to decide on that. But there comes the further question as to whether, granting all of that, the defendant is liable for other reasons.] [10]

. [It is also a good defense, in addition to the privileged occasion, if the defendant by Mr. Shevlin made a proper investigation and fairly reported the result of his investigation. It is a good defense if the article which was written from that investigation is what he learned. As I have stated it that is too broad a statement, and it would hardly comply with the law. If he made an investigation which a newspaper reporter of ordinary prudence would make under the circumstances, and the matter was presented to him by people who were apparently credible and the story told by them seemed to him, under the circumstances, to be true, it makes no difference if it afterwards turns out to have been false or false in some particulars and true in others, nevertheless he has a right to act upon that information. He says here that he went to the police office and saw the report; then that he saw Mr. Dillon and Mr. Edeburn, the two detectives, and he saw Mr. Myers and Mr. Williamson. I am not positive whether he saw anyone else or not. I do not think that he said he saw the telephone girl, or anything of that kind. There is not much dispute about the girl calling up. If I have not mentioned all the persons that he saw, you will supply them. He says that they told him that there had been an assault up there and that the woman said two of the men held her while her husband kicked her, and from that he says he wrote this account. He says that he was through with the investigation in the morning at 10 or half past 10 o'clock, and that he believed it. If that is so and you find that was, under all the circumstances and

as the thing looked to him then, as far as he needed to go, as far as a person of ordinary prudence would go, then that is what is called probable cause that we have been talking about here.  If you find that to be the situation, then that is probable cause.  It would rebut any suggestion of malice here, and it would be a complete defense if what was told him was substantially reported in the article.]  [11]

[The headlines are radically different.  In the 6 P. M. edition it expressly says that Mr. McGeary was held as a witness.  In the other it says that he was with the party arrested for kicking a woman and that he is held in the case for the assault on the woman.]  [12]

[In one it says that the woman declined to implicate anybody, and in the other it says Captain Dean obtained a statement from her in which she exonerated the two who were present but charged her husband.  So that, even assuming that everything that Mr. Shevlin said is literally true, I could not say that that made a defense because of what I have just mentioned.  So that you consider those matters upon that proposition.  If his information and the other matters that I have outlined are sufficiently made out, was the account given the same as his information?]  [13]

[It was suggested by Mr. Marshall in his argument to you that Mr. Shevlin did not go as far as he ought to have gone, that it was reasonable and proper for him to call upon other people and get other sources of information; that he ought to have gone to the hospital to see whether it was true that the woman was lying at the point of death, and whether it was true that the baby's life was going to be sacrificed or had been sacrificed, and whether he should have seen Mr. McGeary and Mr. Huselein. That is a matter for you.]  [14]

*Errors assigned* among others were (1) in refusing binding instructions for defendant; (2–6, 10–14) above instructions, quoting them.

*John P. Hunter,* of *Lyon & Hunter,* with him *Herbert R. Hahn,* for appellant.—The declaration is wholly defective: Deford v. Miller, 3 P. & W. 103; Stitzell v. Reynolds, 59 Pa. 488; Pitts. A. & M. Passenger Ry. Co. v. McCurdy, 114 Pa. 554; Nat. Bank v. L. E. Asphalt Block Co., 233 Pa. 421.

The publication was privileged, and under the undisputed testimony in the case, the court should have given binding instructions for the defendant, or should have entered judgment non obstante veredicto: Conroy v. Pitts. Times, 139 Pa. 334; Ferber v. Gazette & Bulletin Pub. Assn., 212 Pa. 367; Urben v. Pittsburg Times, 1 Monaghan, 135; Press Co. v. Stewart, 119 Pa. 584; Smith v. Ege, 52 Pa. 419; Bernar v. Dunlap, 94 Pa. 329.

If probable cause exists, the question of malice becomes of no importance. If probable cause does not exist, and there is no malice, then no recovery can be had. But malice must always be present, and it is immaterial whether such malice is shown from outside facts, or whether the jury find it from the inherent character of the publication itself. That is merely a matter of evidence: Briggs v. Garrett, 111 Pa. 404; Conroy v. Pitts. Times, 139 Pa. 334; Rowand v. DeCamp, 96 Pa. 493; Smith v. Ege, 52 Pa. 419; Wallace v. Jameson, 179 Pa. 98.

*Thomas M. Marshall, Jr.,* with him *Thomas M. Marshall,* for appellee.—No innuendo was necessary. The article charged the plaintiff with a criminal offense and was libelous per se: Binder v. Pub. Co., 33 Pa. Superior Ct. 411; Conroy v. Pittsburg Times, 139 Pa. 334; Nowlis v. Hurwitz, 232 Pa. 154; Montgomery v. Printing Co., 229 Pa. 165.

OPINION BY RICE, P. J., October 14, 1912:

It was alleged in the plaintiff's statement of claim as follows: "In an 'Extra Edition' called the 'Afternoon Edition' of the Pittsburg Leader, . . . . the defendant published an article on the front page of said paper in

flaming red headlines five and half by fifteen and half inches in size, upon which was printed in enormous black letters 'McGeary with party arrested for kicking woman who now lies near to death,' and immediately below said red headline in very large letters was printed 'Babe's life pays price for mother. Jesse McGeary, former coroner, held in case of assault on woman, which may result in death of victim and child. Shriek over the wire. Central call the ——: Don't kill me: For God's sake, don't kick me any more, and take two lives." Below these fraudulent words, on the front page of said paper, was printed a picture of the plaintiff with his name below it. The original article as thus published, is hereto attached, referred to and made part of this statement of claim as Exhibit A." Then follow averments, some of which we shall refer to later, of malice, falsity of the publication, want of reasonable grounds of belief that it was true, and damages.

The appellant's first general proposition is that the statement of claim was fatally defective, and, therefore, though the defendant had not demurred, but had pleaded the general issue, it was not precluded from setting up its defectiveness by objection to the admission of the alleged libelous article in evidence, or by motion for binding direction, or by motion for judgment non obstante veredicto.

The first ground of objection which counsel specify under this general head of their argument, is that the statement did not allege that the publication was of and concerning the plaintiff. True, that precise form of expression was not used, but the article shows on its face that it was of and concerning Jesse McGeary, former coroner, whose portrait, with the plaintiff's name below it, was printed as part of the article, and it was alleged in the statement that this was the portrait of the plaintiff. Further, the statement alleged that the company and its officers had special and particular malice arising out of special ill-will against the plaintiff, "and the publication

of said article was with the malicious purpose of injuring
the plaintiff in his good name," etc.   Then, after alleging
the cause or occasion for this special ill-will, the statement
alleged that since that time the defendant had, from time·
to time, published articles derogatory to the plaintiff, and
"to gratify the special malice and ill-will of the said paper
and its officers finally published the false and malicious
libel complained of in this case."   Giving these and other
words of the statement a reasonable intendment, they
allege substantially that the publication was of and con-
cerning the plaintiff.   This was sufficient, although those
precise words were not used: Brown v. Lamberton, 2 Bin-
ney, 34.

The second objection urged by counsel under this gen-
eral head of their argument, is that the statement was
defective because it contained no innuendo stating that
the meaning of the language was that McGeary was ar-
rested for kicking the woman, or stating that the defend-
ant meant that plaintiff was guilty of kicking the woman,
or stating that defendant means that McGeary was guilty
of the crime of assault on the woman; in short, that an in-
nuendo was necessary in order to give notice to the defend-
ant of the meaning which the plaintiff assigned to the
words used and intended to charge in his statement.
Even if it be conceded that there was lack of precision in
this particular, and that this would have been a valid
objection if raised in limine (a point we need not decide),
it does not necessarily follow that it was a valid objection
at the time it was first raised: Binder v. Pottstown Daily
News Pub. Co., 33 Pa. Superior Ct. 411.   It is a familiar
and well-settled rule of pleading, that by pleading the
general issue and going to trial thereon the defendant
waives all defects in the declaration that are not funda-
mental.   Hence, if without an innuendo, the substance of a
good cause of action was shown on the record, the objec-
tion that it was not stated as specifically and with as
much precision as the defendant might have demanded,
was waived.   The proper application of the general prin-

ciple is well illustrated in State Ins. Co. of Missouri v. Todd, 83 Pa. 272, and Rice v. Palatine Ins. Co., 17 Pa. Superior Ct. 261.  It therefore becomes necessary to determine whether the article complained of contained matter which, construed in connection with the other parts of it, was prima facie libelous.  The old doctrine of mitiori sensu, by which words laid as defamatory were to be taken in their milder sense, was long ago exploded in England: Peake v. Oldham, 1 Cowper, 275; and never obtained in Pennsylvania.  Thus, in Rue v. Mitchell, 2 Dall. 58, it was declared: "The sense in which words are received by the world, is the sense which courts of justice ought to ascribe to them, on the trial of actions for slander. Slander imports an injury; and the injury must arise from the manner in which the slanderous langugage is understood."  This is equally true of libel; and so it may be said generally, that the speaker or writer is accountable for the import of the words as they would naturally be understood by the hearer or reader.  Ingenuity is not to be resorted to in order to ascribe to them either the more lenient or the more severe sense, but they are to be taken in the sense that fairly belongs to them, that is, "in the plain and popular sense in which the rest of the world naturally understand them:" Roberts v. Camden, 9 East, 93.  It is not the intention of the speaker or writer, or the understanding of any particular hearer or reader, that is to conclusively determine the actionable quality of the words.  It is rather the effect which the language complained of was fairly calculated to produce and would naturally produce upon the minds of persons of ordinary understanding, discretion and candor: Good v. Grit Pub. Co., 36 Pa. Superior Ct. 238.  The rule and the reason for it were thus stated in Hayes v. Press Co., 127 Pa. 642: "The office of an innuendo is to aver the meaning of the language published, but if the common understanding of mankind takes hold of the published words, and at once, without difficulty or doubt, applies a libelous meaning to them, an innuendo is not needed, and if used may be

treated as useless surplusage." This statement of the rule was reiterated and applied in Collins v. Dispatch Pub. Co., 152 Pa. 187; and the principle has been recognized in many other cases, and by text-writers. Its soundness is not open to question. If precedent were needed to show that the publication in question was prima facie defamatory and actionable, the last-cited case would furnish one. The words there held to be, on their face and without the aid of an innuendo, defamatory and actionable, were much more plainly susceptible of an innocent meaning than those contained in this publication. But precedents need not to be sought for. Bearing in mind the accepted definitions of libel, and interpreting the words, "McGeary with party arrested for kicking woman who now lies near to death," and the words, "Jesse McGeary, former coroner, held in case of assault on woman which may result in death of victim and child," in their natural and popular sense—in the sense in which the "common understanding of mankind" takes such words in the connection in which they were used—the court was clearly warranted in submitting the question to the jury, and the jury was clearly warranted in interpreting the words to mean that the plaintiff was a participant in an assault and battery upon a woman. The jury so found, and the court, in overruling the motion for judgment non obstante veredicto, concurred, as we do, in this interpretation of them. It results that the substance of a good cause of action was set forth in the statement, and, therefore, the absence of an innuendo, if a defect, was not such a defect as could be taken advantage of to defeat the action, after pleading the general issue.

The appellant's second general proposition is that the publication was privileged, and, under the undisputed testimony in the case, the court should have given binding instructions for the defendant, or should have entered judgment n. o. v. In view of this contention, it will be well to refer to certain familiar and well-settled principles relating to privileged communications. The privilege

here under consideration is not absolute, but qualified. A privileged communication of the latter class is defined as one made upon a proper occasion, from a proper motive, and based upon reasonable or probable cause; to which, according to the doctrine of Conroy v. Pittsburg Times, 139 Pa. 334, and later as well as earlier cases, should be added the qualification, "that it should be made in a proper manner, for if the manner be improper the privilege is lost." Since the immunity of a privileged communication is an exception to the general rule that nothing short of proof of the truth is a defense to a libel, he who relies on the exception must prove all the facts necessary to bring himself within it: Conroy v. Pittsburg Times, 139 Pa. 334; Mulderig v. Wilkes-Barre Times, 215 Pa. 470; Montgomery v. New Era Printing Co., 229 Pa. 165. Hence, where the words of the publication impute the commission of an indictable offense, the presumption of innocence is prima facie evidence of falsity and want of probable cause, and sufficient to put defendant to proof of the facts to support his claim of privilege. In the case at bar, the plaintiff did not rely on this presumption, but in the presentation of his case in chief adduced evidence which, if believed by the jury, would sustain a finding by them of the falsity of the charge. Obviously, therefore, the burden of proving the facts necessary to sustain the claim of privilege was cast on the defendant. So far as the question of privileged occasion is concerned, there is little difficulty. It is within the bounds of legitimate journalism for newspapers to publish as current news all such matters as involve open violation of law or public misconduct of such character as justifies police interference, even though the doing so may reflect upon the actors and thus tend to bring them into public disgrace or contempt: Ferber v. Gazette & Bulletin Pub. Assn., 212 Pa. 367. But in such case it is not enough that the occasion supplied one element of the immunity of privilege, and that the privilege was not exceeded by the manner of publication; it is still incumbent on the defendant to prove that he had reasonable or probable cause.

Probable cause that would justify a publication charging an indictable offense, would justify a prosecution for the alleged crime: Neeb v. Hope, 111 Pa. 145; Briggs v. Garrett, 111 Pa. 404. It does not depend on the actual state of the case in point of fact, but upon the honest and reasonable belief of the party prosecuting or publishing the charge. It has been defined to be a reasonable ground of suspicion, supported by circumstances sufficient to warrant a cautious man in believing that the party is guilty of the conduct imputed to him: Smith v. Ege, 52 Pa. 419. The probable cause that will warrant belief must be found in circumstances of adequate probative force, lying within personal knowledge or information derived from sources of such a character as to lead a reasonably prudent man to regard it as trustworthy: Com. v. Swallow, 8 Pa. Superior Ct. 539. The test is not merely whether the circumstances and information induced such belief in the defendant, but whether they were sufficient to lead a reasonably prudent man to believe the party guilty of the alleged misconduct: Com. v. Storey, 49 Pa. Superior Ct. 282. Even in reporting an occurrence proper for publication there may be such an absence of the required diligence and care to ascertain the truth as to make the report libelous: Clark v. North American Co., 203 Pa. 346, citing Shelly v. Dampman, 1 Pa. Superior Ct. 115. In the present case, this branch of the defense was based on information alleged to have been received from others. There was involved in it the question as to what the information was, as to its sources, as to the conformity of the publication with the information received, and as to the care and diligence exercised to ascertain the truth. These were questions of fact, and as the determination of them depended on oral testimony introduced by the defendant, upon whom the burden of proof rested, they were for the jury. In short, it was not the province of the court to pass on the credibility of the witnesses and to declare that the facts necessary to establish the defense were conclusively established.

It follows from the foregoing, that the appellant's first

two general propositions cannot be sustained, and, therefore, the assignments of error to the admission of the alleged libelous publication in evidence, to the refusal of defendant's points asking for binding direction, and to the refusal of its motion for judgment n. o. v., must be overruled.

Under the third head of their argument, counsel for appellant discuss the assignments alleging error in the court's answers to their points. The first two of these assignments have, in effect, been disposed of in our general discussion, and need not be further noticed. The third point (third assignment) was substantially the same as that presented in Ferber v. Gazette & Bulletin Pub. Assn., 212 Pa. 367. But in that case the point was affirmed with the qualification: "if the jury believe the publications were true or that the defendant had probable cause to believe them to be true." The case is not authority for the proposition that the law was fully stated in the point. The point presented here contained no such qualification. The affirmance of it without such qualification would have been to ignore, as unessential, the element of probable cause, as well as the manner of publication, and make the case depend solely upon the single question whether the occasion was privileged. The point was too broad, and therefore the court committed no error in refusing it as stated. Moreover, the court had instructed the jury correctly upon the subject in its general charge.

If the article complained of had contained no more than a plain statement of the facts set forth in the fourth and fifth points as having been communicated to the defendant by the police officers, and fair comments, though strongly condemnatory of the conduct there described, there would be much force in the contention that these points should have been affirmed. But the publication was not kept within those limits. Other matters were stated, as, for example: "who" (the woman) "lies near to death"—"Babe's life pays price for mother"—"which" (assault on woman) "may result in death of victim and

child." These and other expressions that might be referred to went beyond the information alluded to in the points, and were of such a character and were displayed in such manner as to tend to convey the impression that the assault, bad enough at the best, was more aggravated and atrocious, at least in its consequences. We have alluded to the settled principle that the privilege may be lost by the manner of publication. In Wallace v. Jameson, 179 Pa. 98, after citing some of the many cases relating to that subject, the court said: "While a fair account of the transaction which was the basis of the publication would have been privileged, the manner and style of this account and comment were for the consideration of the jury to determine if the privilege had been exceeded, and were properly submitted to them for that purpose." Having regard to this just and well-settled principle, we conclude that the court was right in refusing these points and in submitting the question, whether the limits of privilege were exceeded, to the jury.

In disposing of the sixth assignment of error, it is to be noticed that the information spoken of in the point as having been given to the reporter by the policemen, was not of a fact within the latters' knowledge, but of a fact which had been communicated to them by Mrs. Huselein. It was hearsay even as it came to the defendant's reporter. And while this would not be ground for excluding the evidence (Com. v. Storey, 49 Pa. Super. Ct. 282) it was a circumstance to be considered by the jury in determining whether there was negligence in failing to make an inquiry of the plaintiff and others as to the truth of the serious charge. It cannot be declared, as matter of law, either that this was or that it was not a positive duty. But it is to be borne in mind that the probable cause for belief, that will rebut malice, excludes negligence, and it is an elementary principle of the law of negligence, that where the precise measure of duty is not fixed by any positive rule of law, but shifts with the circumstances, the question whether due care and diligence were exercised is for the jury. The

principle is applicable here, and, therefore, there was no error in refusing the point. We remark further in this connection, that the learned trial judge instructed the jury quite fully upon this subject, saying, amongst other things: "If he made an investigation which a newspaper reporter of ordinary prudence would make under the circumstances, and the matter was presented to him by people who were apparently credible, and the story told by them seemed to him, under the circumstances, to be true, it makes no difference if it afterwards turns out to be false or false in some particulars and true in others, nevertheless he has a right to act upon that information." Then, after allusions to the evidence, the court said: "He says that they told him that there had been an assault up there and that the woman said two of the men held her while her husband kicked her, and from that he says he wrote this account. He says that he was through with this investigation in the morning at ten or half past ten o'clock, and that he believed it. If that is so, and you find that was, under all the circumstances and as the thing looked to him then, as far as he needed to go, as far as a person of ordinary prudence would go, then that is what is called probable cause we have been talking about here. If you find that to be the situation, then that is probable cause. It would rebut any suggestion of malice here, and it would be a complete defense if what was told him was substantially reported in the article." This was presenting the case as favorably to the defendant as it could reasonably ask.

In the argument in support of the twelfth assignment it is assumed that the court took upon itself the function of instructing the jury as to the meaning of the headlines. But in other portions of the charge this question had been fully, explicitly and unreservedly submitted to them, and the remark embraced in this assignment could not have been interpreted by them as taking that question from them. If there was any error, it was in not stating the contents of the headlines in their precise words. But in an earlier portion of the charge the headlines of the article

in question were quoted verbatim and their meaning was submitted to the jury's determination in terms that could not be misunderstood. "Further," (as the learned judge says in his opinion correcting the transcript of the charge) "the two articles with their headlines were taken by the jury to their room and they could not be misled, and the statement if heard by them as 'for' instead of 'of' would not prejudice the defendant in view of the submission of the whole matter to them in the earlier part of the charge." This is all that need be said as to this assignment. The remaining assignments relate to other portions of the charge. We need not discuss them separately. After full consideration of the criticisms made by counsel, and viewing these portions of the charge with the context and in the light of the evidence, we conclude that they contain no error of which the defendant can justly complain.

Finally, it is urged that the charge was vague and misleading. We cannot agree with counsel in this contention. On the contrary, we are all of opinion that it was adequate and impartial and was expressed in such terms as to clearly present the questions of fact to be determined by the jury, and the principles of law applicable to the facts as they should be found by them. The case was well tried, and we find no reason for disturbing the judgment.

The judgment is affirmed.